## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

| | | |
|---|---|---|
| PFIZER INC.,<br>PFIZER IRELAND PHARMACEUTICALS,<br>WARNER-LAMBERT COMPANY, and<br>WARNER-LAMBERT COMPANY LLC, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 7231 |
| | ) | |
| APOTEX INC., and | ) | Judge: Dow |
| APOTEX CORP., | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STAY

John S. Mortimer
Jeffrey M. Drake
WOOD PHILLIPS
500 West Madison Street
Suite 3800
Chicago, IL 60661-2562
(312) 876-1800

OF COUNSEL:
Rudolf E. Hutz (#484)
Jeffrey B. Bove (#998)
Mary W. Bourke (#2356)
Daniel C. Mulveny (#3984)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
Wilmington, DE 19899
(302) 658-9141

William E. McShane
CONNOLLY BOVE LODGE & HUTZ LLP
1875 Eye Street, NW
Suite 1100
Washington, DC 20006
(202) 572-0335

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS .......................... 2

III.    FACTUAL BACKGROUND ....................................................................................... 3

     A.      The Parties ......................................................................................................... 3

     B.      This Litigation.................................................................................................... 4

     C.      The Hatch-Waxman Act ..................................................................................... 6

     D.      The Lipitor® Patents........................................................................................... 6

     E.      Previous Delaware Lipitor® Litigations............................................................. 7

          1.      Ranbaxy. ................................................................................................. 8

          2.      Teva........................................................................................................ 9

          3.      Cobalt. .................................................................................................. 10

IV.     ARGUMENT ........................................................................................................... 11

     A.      The Standard On A Motion to Stay .................................................................. 11

     B.      A Stay Will Simplify this Case and Conserve the Resources of the
          Parties and the Court. ....................................................................................... 13

          1.      The "First to File" Presumption Favors Litigation In
               Delaware. .............................................................................................. 13

          2.      A Stay Is Appropriate. .......................................................................... 16

          3.      Dismissal Is Inappropriate. ................................................................... 18

          4.      Stay Is Especially Appropriate In ANDA Cases. .................................. 18

V.      CONCLUSION........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
  No. 07-993, 2007 WL 4284877 (W.D. Mich. Dec. 7, 2007)...................................................21

*Amgen, Inc. v. Ariad Pharms., Inc.*,
  513 F. Supp. 2d 34 (D. Del. 2007)....................................................................................16, 18

*Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*,
  892 F.2d 566 (7th Cir. 1989) ............................................................................................13, 16

*Aventis Pharma Deutschland GMBH v. Lupin Ltd.*,
  403 F. Supp. 2d 484 (E.D. Va. 2005) .....................................................................................22

*Bd. of Trs. of the Teachers' Ret. Sys. v. WorldCom, Inc.*,
  244 F. Supp. 2d 900 (N.D. Ill. 2002) .....................................................................................12

*Blair v. Equifax Check Servs., Inc.*,
  181 F.3d 832 (7th Cir. 1999) ...................................................................................................14

*Central States, Southeast & Southwest Areas Pension Fund v. Paramount Liquor Co.*,
  203 F.3d 442 (7th Cir. 2000) .............................................................................................14, 21

*Citadel Group Ltd. v. Washington Regional Med. Ctr.*,
  No. 07-1394, 2008 WL 5423553 (N.D. Ill. Dec. 29, 2008)....................................................17

*Colorado River Water Conservation District v. United States*,
  424 U.S. 800 (1976)................................................................................................................14

*Cote v. Wadel*,
  796 F.2d 981 (7th Cir. 1986) ...................................................................................................14

*Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*,
  130 F.2d 474 (3d Cir. 1942) ...................................................................................................16

*Deakins v. Monaghan*,
  484 U.S. 193 (1988)................................................................................................................14

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005)................................................................................................................13

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993) ................................................................................................16

*Government of Virgin Islands v. Neadle*,
  861 F. Supp. 1054 (M.D. Fla. 1994)......................................................................................13

*In re Rosuvastatin Calcium Patent Litig.*,
  MDL No. 08-19492008 WL 5046424 (D. Del. Nov. 24,2008)..................................................2

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) ............................................................................... 14

*Koster v. Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947) ............................................................................... 17

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................... 1, 12, 13

*Martin v. Graybar Elec. Co.*,
  266 F.2d 202 (7th Cir. 1959) ............................................................... 16

*Merck & Co. v. Apotex, Inc.* ,
  488 F. Supp. 2d 418 (D. Del. 2007), *aff'd*, 287 Fed. App'x 884 (Fed. Cir. 2008) ..................... 2

*PDL Biopharma, Inc. v. Sun Pharm. Indus., Ltd.*,
  No. 07-11709, 2007 WL 2261386 (E.D. Mich. 2007) ........................... 21

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*,
  405 F. Supp. 2d 495 (D. Del. 2005) ....................................................... 9

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
  457 F.3d 1284 (Fed. Cir. 2006) .................................................. 4, 7, 8, 9

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  --- F.3d ---, No. 2008-1050, 2009 WL 349356 (Fed. Cir. Feb. 13, 2009) ................................ 6

*Schering Corp. v. Caraco Pharm. Labs., Ltd.*,
  No. 06-14386, 2007 WL 1648908 (E.D. Mich. June 6, 2007) ............... 21

*Schneider Nat'l Carriers, Inc. v. Carr*,
  903 F.2d 1154 (7th Cir. 1990) ............................................................... 15

*Serlin v. Arthur Andersen & Co.*,
  3 F.3d 221 (7th Cir. 1993) .............................................................. 13, 15

*Warshawsky & Co. v. Arcata Nat'l Corp.*,
  552 F.2d 1257 (7th Cir. 1977) ............................................................... 15

*Zeneca Ltd. v. Mylan Pharms., Inc.*,
  173 F.3d 829 (Fed. Cir. 1999) ............................................................... 17

**Rules and Statutes**

21 U.S.C. § 355 ............................................................................................... 6

21 U.S.C. § 355(a) .......................................................................................... 6

21 U.S.C. § 355(b) ........................................................................................ 10

21 U.S.C. § 355(j)(2)(A)(vii)(IV) .................................................................... 8

21 U.S.C. § 355(j)(5)(B)(iii) ................................................................... 18, 19

28 U.S.C. § 1404(a) ......................................................................................... 3

35 U.S.C. § 112 ............................................................................................... 9

35 U.S.C. § 156 ............................................................................................... 6

35 U.S.C. § 271(e) ........................................................................................... 6

35 U.S.C. § 271(e)(2) ............................................................................ 8, 10, 15

35 U.S.C. § 271(e)(2)(A) ................................................................................. 4

35 U.S.C. §302 ............................................................................................... 7

The Drug Price Competition and Patent Term Restoration Act of 1984,
   P.L. 98-417, 98 Stat. 1585 (1984) ............................................................... 2

U.S. Const. art. III § 2, cl. 1 .......................................................................... 17

**Other Authorities**

*Approved Drug Products with Therapeutic Equivalence Evaluations, 29*[th] *Ed., U.S. Depart. Of Health and Human Services, Food and Drug Admin., Center for Drug Evaluation and Research, Office of Pharmaceutical Science, Office of Generic Drugs, 2009* .......................... 6

*Manual of Patent Examination Procedure* ................................................................ 12

Plaintiffs' Pfizer Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company LLC, formerly Warner-Lambert Company (collectively referred to as "Pfizer" or "Plaintiffs") respectfully submit this Memorandum in Support of their Motion to Stay.

## I.     INTRODUCTION

When a case is co-pending in two federal courts with concurrent jurisdiction, the standard governing entry of a stay is whether a stay would be appropriate.  *Landis v. N.Am. Co.*, 299 U.S. 248, 254-56 (1936).  A stay of this action pending the Delaware District Court's decision addressing personal jurisdiction over Apotex Inc. is appropriate.  The Delaware Court has previously handled numerous cases by Pfizer involving the '995 patent in suit and has adjudicated that patent.  Moreover, this case will involve numerous complex questions under the Hatch-Waxman Act and the Patent Laws.  It is inefficient for this Court to gain familiarity with the law and facts pertinent to resolution of these questions only to have the case proceed in Delaware before a different judge.  A stay could thus save the parties and the Court from unnecessary and expensive litigation.  If this case is not stayed, the parties may have to litigate in two jurisdictions simultaneously.  And this Court will be called upon to rule on key motions that will materially affect the scope of the Delaware litigation if that litigation proceeds.  A stay will not prejudice Apotex.  In fact, a stay will benefit Apotex.  Conservation of judicial resources and the avoidance of duplication fully support a short stay to enable the Delaware Court to resolve whether the case will go forward in Delaware.

For these reasons and additional reasons set forth more fully below, Plaintiffs respectfully request that the Court stay this action pending the Delaware District Court's decision regarding personal jurisdiction over Apotex Inc.

## II.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

This is a second action by Pfizer against Apotex Inc. and Apotex Corp. (collectively "Apotex" or "Defendants") for infringement of U.S. Patent No. 5,273,995 ("the '995 patent") as a result of Apotex's filing of an Abbreviated New Drug Application ("ANDA") seeking permission from the FDA to market a generic version of Pfizer's Lipitor®, the largest selling pharmaceutical product in the world.

Prior to initiating this action, Plaintiffs filed a factually identical action against Apotex in the United States District Court for the District of Delaware, intending that this case would proceed in Delaware. *Pfizer Inc., et al. v. Apotex Inc., et al.*, No. 08-948 (LDD) (the "Delaware Action"). Pfizer was compelled to file this action in Illinois only as a precaution to perfect its rights under the Hatch-Waxman Act[1] in the event that Apotex contested personal jurisdiction in Delaware. Although Apotex Inc. has been sued many times in Delaware and has filed numerous claims there, until recently, Apotex Inc. had never challenged jurisdiction in Delaware. *Compare, e.g., Merck & Co. v. Apotex, Inc.,* 488 F. Supp. 2d 418 (D. Del. 2007), *aff'd*, 287 Fed. App'x 884 (Fed. Cir. 2008) *with In re Rosuvastatin Calcium Patent Litig.,* MDL No. 08-1949, 2008 WL 5046424, at *13-14 (D. Del. Nov. 24, 2008). In this instance, Apotex arbitrarily named its lead counsel in Chicago as its sole agent for service of process, intending to force Pfizer to litigate its claims in Illinois, the jurisdiction not of Pfizer's choice, but of Apotex's choice. Aside from Apotex's litigation counsel, this litigation has no relationship to Illinois.

Apotex Inc., in fact is contesting personal jurisdiction in Delaware and that issue is presently the subject of a motion to dismiss in Delaware. Apotex Corp., a Delaware corporation, is not contesting jurisdiction over it in Delaware.

---

[1] The Drug Price Competition and Patent Term Restoration Act of 1984, P.L. 98-417, 98 Stat. 1585 (1984), is more commonly known as the Hatch-Waxman Act. Under the Act, Pfizer had 45 days to file suit against Apotex in order to gain the benefit of a statutorily mandated 30-month stay of FDA approval of Apotex's ANDA. *See infra* at p. 6.

Pfizer fully recognizes, and so informed Apotex before Apotex filed its motion to dismiss in Delaware, that only one of these suits should actually be litigated, *i.e.*, the Delaware Action.

Following a 30-day stipulated extension of time entered at the request of Apotex, Apotex filed an answer and counterclaims in this action asserting non-infringement and invalidity of the '995 patent as well as three (3) other patents owned by Pfizer, U.S. Patent Nos. 5,686,104 ("the '104 patent"), 5,969,156 ("the '156 patent") and 6,126,971 ("the '971 patent") (collectively the later three patents are referred to as the "Unasserted Patents"). Pfizer had not sued Apotex on the Unasserted Patents.

Pfizer now moves to stay this action pending a determination of whether the Delaware Action will proceed. In the event the Delaware Court determines that it has personal jurisdiction, Pfizer will then move to transfer this action to Delaware pursuant to 28 U.S.C. § 1404(a).

## III.    FACTUAL BACKGROUND

### A.    The Parties

Pfizer Inc. is a research-based pharmaceutical company that invents, develops, manufactures and markets leading prescription medicines for humans and animals throughout the world. Pfizer's most important product, and the world's largest selling pharmaceutical, is Lipitor®, a lifesaving cholesterol-lowering drug containing atorvastatin as its active ingredient in the form of a calcium salt called atorvastatin calcium. Complaint at ¶ 9 (hereinafter "Com. ¶ __"); Counterclaim at ¶¶ 55-56 (hereinafter "Counterclaim ¶ __").[2] Pfizer holds an approved New Drug Application ("NDA") for the atorvastatin calcium formulation sold as Lipitor®. Com. ¶ 9. Lipitor® was approved by FDA for sale and marketing in the United States in 1996. Com. ¶ 11; Counterclaim ¶ 56.

---

[2] A copy of Pfizer's Complaint and Apotex's Answer and Counterclaims are attached hereto as "Exhibit A" and "Exhibit B" respectively.

Defendant Apotex Inc. is a corporation operating and existing under the laws of Canada. Counterclaim ¶ 9. Defendant Apotex Corp. is a sister corporation of Apotex Inc. and is a corporation operating and existing under the laws of Delaware. Com. ¶ 12; Counterclaim ¶ 10. Apotex is in the business of manufacturing generic copies of pharmaceutical products pioneered by other pharmaceutical companies. Com. ¶ 21.

### B. This Litigation

On November 4, 2008, pursuant to the Hatch-Waxman Act, Apotex sent Pfizer and Pfizer's Delaware counsel a notification that it had filed an ANDA seeking to market atorvastatin calcium tablets prior to the expiration, *inter alia*, the '995 Patent. Com. ¶ 14. Apotex is the fifth ANDA filer seeking approval of a generic Lipitor®.[3] Pfizer filed a first complaint against Apotex Inc. and Apotex Corp. in the District of Delaware on December 17, 2008 (Civil Action No. 1:08-cv-00948-LDD, the "Delaware Action").[4] In the Delaware Action, Pfizer alleged that Apotex's ANDA No. 90-548 for atorvastatin calcium tablets infringed the '995 patent pursuant to 35 U.S.C. § 271(e)(2)(A) (Exhibit C, ¶¶ 29-34). The '995 patent claims at issue in this case are directed to atorvastatin. *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006). As explained below, the Delaware Court has previously been involved in numerous cases involving the '995 Patent and ANDA's directed to generic Lipitor®.

After the Delaware Action was filed but the same day,[5] Pfizer filed this second suit against Apotex in the Northern District of Illinois (the "Illinois Action") alleging the same cause of action as the Delaware Action. As stated, Pfizer commenced the Illinois Action only as a protective suit in the event that Apotex contested personal jurisdiction in Delaware. Apotex Inc. has in fact challenged personal jurisdiction in Delaware and the parties are now in the process of

---

[3] Apotex filed its ANDA more than 6 years after the first-filer Ranbaxy. In none of the previous cases brought by Pfizer to enforce the '995 patent did Pfizer assert any of the Unasserted Patents. *See infra* at p. 11.
[4] A copy of the Complaint in the Delaware Action is attached hereto as "Exhibit C."
[5] The Illinois Action was filed at 4:38 p.m. CST. The Delaware Action was filed with the District of Delaware at 2:56 p.m. EST on December 17, 2009, making it the clear first-filed action.

4

litigating that issue in the Delaware District Court.[6]  In the Delaware Action, Apotex has further moved to Transfer to this court or Stay.[7]

Apotex answered the Illinois Action on February 9, 2009, and filed counterclaims including claims for a declaratory judgment of noninfringement and invalidity of the Unasserted Patents.  *See* Exhibit B.  Consistent with its ANDA notice letter, Apotex did not challenge Pfizer's U.S. Patent No. 4,681,893 (the "'893 patent") which also covers Lipitor®.  *Id.*

The Illinois Action was filed due to Apotex's well-known game of jurisdictional Whac-A-Mole™ that it plays with its ANDA submissions in the United States. Apotex attempts to avoid personal jurisdiction anywhere in the U.S. by launching its ANDAs from behind the Canadian border and then, on an ANDA-by-ANDA basis with different agents each time, Apotex designates its agent for service of process in the jurisdiction where it prefers to litigate that particular ANDA.  In this case, Apotex picked the Northern District of Illinois by designating its Chicago litigation counsel to be its agent. Apotex can identify no other connection between this case and Illinois.

This litigation promises to be complex.  If litigation proceeds in Illinois, Pfizer intends to file a motion to dismiss Apotex's Counterclaims for lack of subject matter jurisdiction, raising the question of whether consistent with the Constitution, this court may assume jurisdiction over Apotex's declaratory judgment counterclaims on the Unasserted Patents.  This type of issue has been the subject of considerable litigation under the unique situation presented by the Hatch-Waxman Act.  *See, e.g., Revolution Eyewear, Inc. v. Aspex Eyewear, Inc*., --- F.3d ---, No. 2008-1050, 2009 WL 349356 (Fed. Cir. Feb. 13, 2009).  Further complicating this matter is the pending reissue of, *inter alia*, claim 6 of the '995 patent-in-suit.  Claim 6 directly covers the

---

[6] A copy of Apotex's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction in the Delaware Action and Pfizer's brief in opposition are attached hereto as "Exhibit D."
[7] A copy of Apotex's Alternative Motion to Transfer Venue or Stay the Delaware Action and Pfizer's brief in opposition are attached hereto as "Exhibit E."

5

atorvastatin calcium contained in Apotex's proposed ANDA product. As detailed below, *infra* at p. 11, the Patent Office has indicated that it will reissue claim 6 on March 17, 2009. When the patent is reissued, Pfizer intends to amend its complaint to include the reissued patent in this action. Apotex has indicated that it intends to oppose any such motion. Further, Apotex has indicated that it intends to move to dismiss Pfizer's existing complaint upon the grant of the reissue asserting that the reissue results in a surrender of all of the claims of the '995 patent. Thus, this case presents a number of questions in a challenging pharmaceutical context, with complex issues of patent law and issues under the Hatch-Waxman Act. Proceeding simultaneously in two courts, both of which would be required to address these motions and the issues they present, would be an extremely wasteful use of judicial resources.

### C. The Hatch-Waxman Act

This case will involve application of the detailed provisions of the Hatch-Waxman Act, which governs the approval of new and generic drugs. *See* 21 U.S.C. § 355; 35 U.S.C. §§ 156, 271(e) . For ease of reference, we include a brief description of these provisions in the Addendum attached hereto as Exhibit J.

### D. The Lipitor® Patents.

Pfizer submitted an NDA to obtain approval by the FDA before marketing and sale of Lipitor® could begin. 21 U.S.C. § 355(a).[8] That NDA was approved in 1996 and marketing began thereafter. Counterclaim ¶ 56. Pfizer complied with its Orange Book obligations and listed five patents for Lipitor® (Counterclaim ¶ 57): the '893 patent; the '995 patent; the '104 patent; the '156 patent; and the '971 patent.[9] In earlier litigation commenced in Delaware against another generic company, Ranbaxy, the United States Court of Appeals for the Federal

---

[8] This section reads in pertinent part:
No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug.
[9] As previously explained, upon approval of the NDA for a new drug, any patents claiming the approved drug or a method of its use are published by FDA in the Orange Book. *See also* the Addendum hereto.

6

Circuit construed the '893 patent "to include the enantiomeric trans-forms of the compounds of structural formula I", *i.e.*, a group of compounds that includes the active ingredient in Lipitor®, atorvastatin in its calcium form. The Court of Appeals also affirmed the District Court of Delaware's holding that the '893 patent was valid and enforceable. *Pfizer, Inc.*, 457 F.3d at 1288-91.

The '995 patent was issued on December 28, 1993, on an application filed by Bruce D. Roth and assigned to Warner-Lambert Company. After years of additional work, Dr. Roth perfected his initial broad invention when he discovered the particular atorvastatin calcium within the '893 genus of compounds. Dr. Roth specifically disclosed and claimed this compound in the '995 patent. Claim 1 of the '995 patent covers atorvastatin acid or atorvastatin lactone; or pharmaceutically acceptable salts thereof. Claim 2 covers atorvastatin acid. And claim 6 in its originally issued form claimed "[t]he hemicalcium salt of the compound of claim 2".[10] The expiration date for the '995 patent is December 28, 2010. Lipitor® was granted a further period of "pediatric exclusivity" under section 505 of the Food, Drug and Cosmetic Act attaching to the '995 patent until June 28, 2011. In the Delaware litigation against Ranbaxy, the Delaware District Court also decided that the '995 patent was valid, enforceable and infringed by Ranbaxy. The Federal Circuit, however, invalidated claim 6 of the '995 patent for a formal claim-drafting defect. *Pfizer, Inc.,* 457 F.3d at 1292. Pfizer has corrected that defect through reissue (35 U.S.C. §302), and the reissue patent will formally issue on March 17, 2009.[11]

**E.    Previous Delaware Lipitor® Litigations.**

As mentioned earlier, Apotex is not the first company to seek FDA approval to market a generic copy of Lipitor®. *See* Counterclaim ¶ 73.

---

[10] There are twelve claims in the '995 Patent. This discussion is limited to the 3 most pertinent claims.
[11] A copy of the Notice of Allowability is attached hereto as "Exhibit F."

###### 1.     Ranbaxy.

Ranbaxy Laboratories Limited and Ranbaxy Pharmaceuticals, Inc. (collectively "Ranbaxy") filed ANDA No. 76-477 on August 19, 2002.  In ANDA No. 76-477, Ranbaxy certified pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) that all five (5) of Pfizer's listed patents were either invalid and/or not infringed by Ranbaxy's proposed ANDA product.  Within the 45-day statutory period set forth in 21 U.S.C. § 355(j)(5)(B)(iii), Pfizer filed complaints against Ranbaxy in the United States District Court for the District of Delaware alleging infringement of the '893 and '995 patents under 35 U.S.C. § 271(e)(2).  The cases were consolidated as Civil Action No. 03-209-JJF.  Pfizer did not bring suit against Ranbaxy on any of the Unasserted Patents.  *See Pfizer Inc. v. Ranbaxy Labs. Ltd*., 405 F. Supp. 2d 495 (D. Del. 2005).

Pfizer alleged infringement by Ranbaxy of the '893 patent and claim 6 of the '995 patent.  Pfizer granted to Ranbaxy a covenant not to sue on all other claims of the '995 patent, except claim 6.  In response to Pfizer's Complaints, Ranbaxy filed an Answer and several Counterclaims on the '995 and '893 patents.  Following a trial, by an opinion dated December 16, 2005, the Delaware District Court held that (1) the '893 patent was not invalid or unenforceable, (2) the '995 patent was not invalid or unenforceable, and (3) Ranbaxy's proposed atorvastatin product literally infringed both the '893 and '995 patents.  *Id*.

Ranbaxy appealed the District Court's decision to the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in Appeal No. 06-1179.  The Federal Circuit affirmed the decision that the '893 patent was valid, enforceable and infringed by Ranbaxy's ANDA product (atorvastatin calcium).  *Pfizer, Inc. v. Ranbaxy Labs. Ltd*., 457 F.3d at 1290.  However, the Federal Circuit overturned the ruling that the '995 patent was not invalid on the basis that claim

8

6 of the '995 patent was an improper dependent claim pursuant to 35 U.S.C. § 112.[12]  *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d at 1292.

Ranbaxy filed a Petition for Rehearing and Rehearing En Banc and the Federal Circuit denied that petition.  An amended final judgment was entered by the Delaware District Court, by Orders of the Court dated November 7, 2006, and November 30, 2006. *Pfizer Inc. v. Ranbaxy Labs Ltd.*, No. 03-209-JJF, DI 338, 344 (D. Del.).[13]

As a result of the finding of invalidity, Pfizer sought reissue of the '995 patent in the United States Patent and Trademark Office specifically to correct the improper dependency of claim 6.  The Patent Office has now issued a Notice of Allowability[14] of the reissue of the '995 patent.  *See* Exhibit F.  Pfizer has paid the reissue fee and has sought expedited issuance of the reissue.  The Patent Office has notified Pfizer that the reissue patent will issue on March 17, 2009.[15]

        2.        **Teva.**

Teva Pharmaceuticals USA, Inc. ("Teva") filed its ANDA No. 78-773 seeking approval from the FDA to engage in the commercial manufacture, use or sale of tablets containing atorvastatin calcium.  Teva's ANDA No. 78-773 includes Paragraph IV certifications against the '995 patent, the '104 patent, the '156 patent and the '971 patent and a Paragraph III certification with respect to the '893 patent.  Thus, like Apotex, Teva elected not to challenge the validity and infringement of the '893 patent by its ANDA product and without more, Teva could not market its product until the expiration of that patent on March 24, 2010.

---

[12] Because validity of a patent is determined on a claim by claim basis, only claim 6 of the '995 patent was invalidated by the Federal Circuit opinion.

[13] A copy of these Judgments is attached hereto as "Exhibit G."

[14] A Notice of Allowability is issued by the Patent Office "whenever an application has been placed in condition for allowance."  *Manual of Patent Examination Procedure* § 1302.03.

[15] A copy of the Issue Notification for Reissue Patent No. 40667 is attached hereto as "Exhibit H."

Within the 45-day statutory period set forth in 21 U.S.C. § 355(j)(5)(B)(iii), Pfizer filed suit against Teva in the United States District Court for the District of Delaware (Civil Action No. 07-360-JJF) alleging infringement of the applicable, valid claims of the '995 patent under 35 U.S.C. § 271(e)(2). A second action was filed (Civil Action No. 08-237-JJF) when Teva amended its ANDA to include several additional dosage strengths. The cases were consolidated by stipulation. Pfizer did not bring suit against Teva on any of the Unasserted Patents.

Teva conceded infringement of claim 2 of the '995 patent and the sole issue that remains is the validity of claim 2. On March 4, 2009, the parties requested that the Delaware District Court continue a pretrial conference for purposes of settlement.

### 3. Cobalt.

Cobalt Pharmaceuticals Inc. ("Cobalt") filed its NDA 22-245 in 2007 seeking approval from the FDA to engage in the commercial manufacture, use or sale of tablets containing atorvastatin sodium.[16] Cobalt's NDA No. 22-245 included Paragraph IV certifications against the '995 patent, the '104 patent, the '156 patent and the '971 patent and a Paragraph III certification with respect to the '893 patent. Thus, like Apotex, Cobalt elected not to challenge the validity and infringement of the '893 patent by its ANDA product.

Within the 45-day statutory period set forth in 21 U.S.C. § 355(j)(5)(B)(iii), Pfizer filed suit against Cobalt in the United States District Court for the District of Delaware (Civil Action No. 07-790-JJF) alleging infringement of the valid claims of the '995 patent under 35 U.S.C. § 271(e)(2). Pfizer did not bring suit against Cobalt on any of the Unasserted Patents.

By stipulation dated, May 14, 2008, Cobalt admitted that the '995 patent would be infringed by the commercial manufacture, use, offer to sell or sale within the United States or

---

[16] Because Cobalt proposed marketing a sodium salt of atorvastatin, its application to FDA was by a New Drug Application. However, the provisions of the Hatch-Waxman Amendments requiring certification to listed patents apply equally to such applications. *See* 21 U.S.C. § 355(b).

importation or causing, directly or indirectly, the importation into the United States the proposed

product that is the subject of Cobalt's NDA 22-245, comprising atorvastatin sodium. Cobalt

further admitted that the '995 is valid and enforceable and waived its defenses and counterclaims

in the above-captioned action. Judgment was entered by the District of Delaware accordingly.

Cobalt is presently enjoined from marketing its atorvastatin product.[17]

Thus, Apotex is the fourth applicant with FDA to seek approval to sell a generic

atorvastatin product before the expiration of the '995 patent to have been sued by Pfizer in

Delaware. First filer Ranbaxy submitted its ANDA for a generic Lipitor® product more than six

(6) years before Apotex filed its ANDA. None of these applications can be approved by FDA

prior to the expiration of the '893 patent on March 24, 2010. Although each of these prior

applications included paragraph IV certifications to the Unasserted Patents, Pfizer did not bring

suit against any ANDA filer based on those patents.

## IV.     ARGUMENT

### A.     The Standard On A Motion to Stay

The decision to stay a case is firmly within the Court's discretion.  *See Landis v. N. Am.*

*Co.*, 299 U.S. 248, 254 (1936) (The power to stay a case is "incidental to the power inherent in

every court to control the disposition of the causes on its docket with economy of time and effort

for itself, for counsel, and for litigants.")  In considering a motion for stay, courts consider both

the interest of judicial economy and the potential prejudice or hardship to the parties. *See Bd. of*

*Trs. of the Teachers' Ret. Sys. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 905-06 (N.D. Ill. 2002).

Where two federal courts with concurrent jurisdiction are involved the movant need not

demonstrate compelling need for a stay, it must demonstrate merely that the stay is appropriate,

*Landis*, 299 U.S. at 254-56.

---

[17] A copy of the Judgment is attached hereto as "Exhibit I."

11

When a federal suit is duplicative of a parallel action already pending in another federal court, the suit may be stayed in the interest of wise judicial administration. *See, e.g., Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223-24 (7th Cir. 1993).  In determining whether actions should stayed or adjudicated when similar litigation is pending in other federal courts, for reasons of wise judicial administration, courts often apply the "first to file" presumption.  Under the presumption, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised overlap substantially. *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co*., 892 F.2d 566, 573 (7th Cir. 1989) (rebuttable presumption exists that first-to-file case should proceed and second case abate).

Filing of a protective action when personal jurisdiction may be lacking in the forum of choice is not inappropriate.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 294 fn 9 (2005) ("There is nothing necessarily inappropriate, however, about filing a protective action."), *citing Government of Virgin Islands v. Needle*, 861 F. Supp. 1054, 1055 (M.D. Fla. 1994) (staying an action brought by plaintiffs "to protect themselves" in the event that personal jurisdiction over the defendants failed in the United States District Court for the Virgin Islands); *See also Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir. 1986) ("Elementary prudence would have indicated to her lawyer that he must file a protective suit in Michigan because there was only a slight probability of obtaining personal jurisdiction in Wisconsin over the defendants.")

"When comity among tribunals justifies giving priority to a particular suit, the other action (or actions) should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests."  *Central States, Southeast & Southwest Areas Pension Fund v. Paramount Liquor Co*., 203 F.3d 442, 444 (7th Cir. 2000); *Deakins v. Monaghan*, 484 U.S. 193, 202-04 (1988); *Colorado River Water Conservation District v. United*

12

*States*, 424 U.S. 800, 817-20 (1976); *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co*., 342 U.S. 180 (1952); *Blair v. Equifax Check ~~Services~~Servs., Inc*., 181 F.3d 832, 838-39 (7th Cir. 1999).

**B.      A Stay Will Simplify this Case and Conserve the Resources of the Parties and the Court.**

A district court has discretion to stay an action which duplicates one pending in another federal district court. *Kerotest Mfg. Co.,* 342 U.S. at, 182-84.  When federal courts face the prospect of concurrent proceedings, the general principle is to avoid duplicative litigation. *Colorado River*, 424 U.S. at 817.  A temporary stay of this action pending the Delaware District Court's resolution of the personal jurisdiction issue will eliminate any duplication of effort which otherwise might arise from proceeding in two courts.  Should the Delaware District Court determine that personal jurisdiction over Apotex exists in Delaware, a stay would obviate this action entirely without duplication of effort.  As indicated previously, this matter will involve complex and difficult issues.  *See supra* at pp. 4-5.  Litigation of this matter in two courts simultaneously is in the interest of neither party.

There can be little doubt that this action parallels the Delaware Action.  "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990).  The parties and the cause of action plead by Pfizer in Delaware and Illinois are identical.  The question presented, therefore, is whether a stay of this action in favor of the Delaware Action is appropriate.

**1.      The "First to File" Presumption Favors Litigation In Delaware.**

The "first-to-file" rule is the doctrine that, in the interests of judicial economy, a court may stay, transfer or dismiss an action if the claim involves the same parties, issues, and facts as an action currently pending in another court. *Serlin v. Arthur Andersen & Co*., 3 F.3d 221, 223 (7th Cir. 1993). The general rule in situations where duplicative actions are pending in different

districts is that the first-filed action will be given priority and allowed to proceed over the later action. *See Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1263 (7th Cir. 1977) (stating that "unless unusual circumstances warrant, the party filing later in time should be enjoined from further prosecution of his suit."); s*ee also Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993).

As the first filed action, Pfizer's selection of Delaware is entitled to deference under the "first to file" presumption. Absent some compelling reason to litigate in Illinois, a stay in favor of the first filed Delaware Action is appropriate. *See Asset Allocation*, 892 F.2d at 573. Pfizer's desire to litigate this matter in Delaware is not arbitrary. In fact, there are compelling reasons to litigate this matter in Delaware which simply do not exist in Illinois.

First, Pfizer is incorporated in Delaware and "Delaware has a substantial interest in maintaining lawsuits brought by its corporate citizens and between Delaware corporations." *Amgen, Inc. v. Ariad Pharms., Inc.*, 513 F. Supp. 2d 34, 46 (D. Del. 2007). Further, the general rule is that when a party chooses to litigate in his home forum, his choice will be given more deference then if he had selected a different forum. *Citadel Group Ltd. v. Washington Regional Med. Ctr.,* No. 07-1394, 2008 WL 5423553, at *4 (N.D. Ill. Dec. 29, 2008) ("The plaintiff's choice of forum is generally given great deference, particularly when the plaintiff resides in the district, unless material facts occurred elsewhere."); s*ee also Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

Second, this case involves Apotex's tort of patent infringement committed against Pfizer, a Delaware corporation. Because Apotex has committed (thus far) only the highly technical act

14

of infringement defined in 35 U.S.C. § 271(e)(2), the only tangible aspect of Apotex's tort is the injury to Pfizer and this injury occurred where Pfizer resides -- Delaware.[18]

Third, Pfizer is litigating two nearly-identical cases in Delaware against Teva (these cases were consolidated and a scheduled pretrial conference has been adjourned based on an agreement in principle to settle the litigation) and has fully litigated the patent-in-suit in Delaware previously. Pfizer designated the Teva actions as related cases when it filed its complaint in the Delaware Court. Conversely, neither Apotex's detailed answer and counterclaims in this action nor its brief in support of its motion to dismiss in Delaware identify any aspect of this case as being located in Illinois.

Fourth, co-defendant Apotex Corp. -- a Delaware corporation over whom jurisdiction is not contested in Delaware -- is involved in this case. It has filed a counterclaim against Pfizer. Delaware has expressed a substantial interest in hearing cases between Delaware corporations, *Amgen*, 513 F. Supp.2d at 46, and Apotex cannot show anything, such as convenience of witnesses or location of documents, to suggest that the instant dispute between Pfizer and Apotex Corp. would be better heard in Illinois.

Fifth, both Apotex entities have appeared in Delaware to litigate many times in the past including filing of counterclaims. Apotex should not be heard to claim that Delaware presents any unique hardship for it.

Conversely, this case has no relationship to Illinois. By its own admission, Apotex Inc. is a Canadian corporation, allegedly with all of its facilities and offices located in Canada. Counterclaim ¶ 9. In its filings in the Delaware Action, Apotex contends that it conducted all of the underlying activities leading up to its instant ANDA filing in Canada, not Illinois. Further,

---

[18] The "government contacts exception" prohibits jurisdiction from attaching in Maryland, where Apotex filed its ANDA with the FDA. *Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829, 832 (Fed. Cir. 1999) (Gajarsa, C.J., concurring).

Apotex alleges that, if its ANDA is approved by the FDA, it will not be directly selling generic Lipitor® in the United States. In fact, Apotex alleges that everything supporting its ANDA occurred in Canada, not Illinois.

Apotex asserts that its only contacts with the United States in connection with its ANDA are: (1) designating an agent in Chicago, Illinois -- its litigation counsel; (2) submitting the actual ANDA to the FDA's offices in Maryland; and (3) sending Apotex's ANDA notice letter to Pfizer and its Delaware counsel. Thus, the only connection with Illinois is Apotex's designated agent, who is also Apotex's lead counsel in this case.

Apotex's business as a drug company critically depends on filing ANDAs with the FDA and litigating about the validity, infringement, and/or enforceability of patents that protect the target drug Apotex wants to copy. However, Apotex has not consistently designated its Chicago litigation counsel as the agent for service of process regarding each individual ANDA it has submitted to the FDA. Instead, Apotex designates different agents for reasons known only to itself and thus tries to steer the resultant litigation to specific District Courts, on a case-by-case basis. If sued in a different jurisdiction, as here, Apotex either accepts that alternative or it denies that the Court has personal jurisdiction and seeks to transfer to the jurisdiction where its designated agent resides. In short, Apotex -- claiming to act only outside of the United States -- seeks through the designation of different agents in different locations for different ANDAs to manipulate the U.S. Judicial System to its own benefit, while denying the injured pioneer drug company the right to litigate where the injury occurred.

Pfizer's choice of forum should be given effect.

## 2.    A Stay Is Appropriate.

A stay will not harm Apotex. This case has not progressed beyond the pleading stage. Indeed, Apotex itself requested a 30-day extension of time before responding to Pfizer's

16

Complaints.  Waiting a further short period of time while the Delaware Court resolves the personal jurisdiction issue will not prejudice Apotex.  Rather, a stay will save Apotex the substantial expense of proceeding in two forums simultaneously.  The resolution of the personal jurisdiction question in Delaware should proceed with haste.

As stated, this litigation promises to be complex.  If litigation proceeds in Illinois, Pfizer intends to file a motion to dismiss Apotex's Counterclaims for lack of subject matter jurisdiction, raising the question whether consistent with the U.S. Const. art. III § 2, cl. 1, this court may assume jurisdiction over Apotex's declaratory judgment counterclaims on the Unasserted Patents.  This type of issue has been the subject of considerable litigation under the unique situation presented by the Hatch-Waxman Act.  Further complicating this matter is the pending reissue of claim 6 of the '995 patent-in-suit.  The Patent Office has indicated that it will reissue the '995 patent on March 17, 2009.  When the patent is reissued, Pfizer intends to amend its complaint to include it in this action.  Apotex has indicated that it intends to oppose any such motion.  Further, Apotex has indicated that it intends to move to dismiss Pfizer's existing complaint upon reissue, asserting that the reissue results in a surrender of all of the claims of the '995 patent. Thus, this case presents a significant issue under the patent laws in a challenging pharmaceutical context.  Proceeding in two courts with these issues simultaneously would be an extremely wasteful use of judicial resources.  A stay pending resolution of personal jurisdiction over Apotex Inc. in Delaware will save both parties the expense of arguing these complex questions in two jurisdictions.  This is clearly in Apotex's interest as much as Pfizer's.

It makes little sense for this Court to gain familiarity with all of the facts and law pertinent to resolution of these questions, only to have the case proceed in Delaware before a different judge.  And it is especially appropriate that if the Delaware Court determines that the

17

Delaware Action will proceed, that the Delaware Court resolve these questions as they will directly impact the scope of and future proceedings in the Delaware Action.

A stay will conserve judicial resources. Proceeding to litigate in both courts will inevitably result in multiplication of efforts. The two jurisdictions, Delaware and Illinois, should not proceed in parallel actions absent exceptional situations not present here. A stay will prevent this from occurring.

For all of these reasons, moving forward with this matter at this time will involve expenditure of scarce judicial resources which may be entirely unnecessary if personal jurisdiction is found over Apotex Inc. in Delaware.

### 3. Dismissal Is Inappropriate.

Dismissing this action is not appropriate. Pfizer's sole purpose in bringing this action in Illinois was to foreclose the possibility it could be determined that it had failed to bring and maintain a suit against Apotex within the 45-day period prescribed by 21 U.S.C. § 355(j)(5)(B)(iii), should Delaware be found to lack personal jurisdiction over Apotex Inc. In such an event, Pfizer could be found to have forfeited its right to the automatic stay of approval of Apotex's ANDA that exists independently of other barriers to Apotex's approval. Accordingly, dismissal is inappropriate because Pfizer's interests can be adversely impacted. *See Central States,* 203 F.3d at 444.

### 4. Stay Is Especially Appropriate In ANDA Cases.

As noted by the Supreme Court, filing of a protective action where a potential challenge to personal jurisdiction may exist in the first filed action is not inappropriate. This is especially true in ANDA litigation where several Federal Courts have addressed the identical issue presented in this motion. *PDL Biopharma, Inc. v. Sun Pharm. Indus., Ltd.*, No. 07-11709, 2007 WL 2261386 (E.D. Mich. 2007); *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, No. 07-

993, 2007 WL 4284877 (W.D. Mich. Dec. 7, 2007); *Schering Corp. v. Caraco Pharm. Labs., Ltd*., No. 06-14386, 2007 WL 1648908 (E.D. Mich. June 6, 2007). In each of these ANDA cases the court has found stay of the second filed "protective" case to be appropriate given the short time limit for filing established by 21 U.S.C. § 355(j)(5)(B)(iii). *Id., but see Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 491 (E.D. Va. 2005) (refusing to apply "first to file rule" and refusing to stay).

## V.       CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Stay this case for a short period to allow the Delaware Court to determine if it will proceed should be granted.

RESPECTFULLY SUBMITTED,

  /s/Jeffrey M. Drake
John S. Mortimer
Jeffrey M. Drake
WOOD PHILLIPS
500 West Madison Street
Suite 3800
Chicago, IL  60661-2562
(312) 876-1800

OF COUNSEL:
Rudolf E. Hutz (#484)
Jeffrey B. Bove (#998)
Mary W. Bourke (#2356)
Daniel C. Mulveny (#3984)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
Wilmington, DE 19899
(302) 658-9141

William E. McShane
CONNOLLY BOVE LODGE & HUTZ LLP
1875 Eye Street, NW
Suite 1100
Washington, DC 20006
(202) 572-0335
*Attorneys for Plaintiffs*
Dated: March 16, 2009
670359_1

19

### CERTIFICATE OF SERVICE

I, Jeffrey M. Drake, caused to be served a copy of the foregoing:

Memorandum In Support of Plaintiffs' Motion to Stay

by filing same with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following counsel of record:

| |
|---|
| William A. Rakoczy |
| Paul J. Molino |
| Deanne M. Mazzochi |
| Andrew M. Alul |
| Rakoczy Molino Mazzochi Siwik, LLP |
| 6 West Hubbard Street |
| Suite 500 |
| Chicago, Illinois 60654 |
| |
| *Attorneys for Apotex* |

/s/Jeffrey M. Drake

20