

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **PFIZER INC.,** | ) | |
| **PFIZER IRELAND PHARMACEUTICALS** | ) | |
| **WARNER-LAMBERT COMPANY,** and | ) | |
| **WARNER-LAMBERT COMPANY, LLC,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 08 C 7231 |
| | ) | |
| v. | ) | Judge Robert M. Dow |
| | ) | |
| **APOTEX INC.,** and | ) | Magistrate Judge |
| **APOTEX CORP.,** | ) | Martin C. Ashman |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, including Pfizer Inc. ("Pfizer"), sued Apotex Inc. and Apotex Corp.

(collectively "Apotex") for patent infringement. Currently before the Court is Pfizer's Motion for

a Protective Order seeking to limit certain activities of Apotex's outside counsel who review

certain documents this Court ordered Pfizer to produce to Apotex. The Court rules on this

Motion under District Judge Robert M. Dow's referral of this case for discovery supervision

pursuant to N.D. Ill. Rule 72.1. For the reasons stated below, the Court finds that Pfizer's Motion

is denied.

### I.   Background

The facts underlying this case have been thoroughly laid out by the District Judge in his

prior Order denying Pfizer's motion to dismiss. *See Pfizer, Inc. v. Apotex, Inc.*, — F. Supp.2d — ,

Nos. 08-cv-7231 *et al.*, 2010 WL 2649841, at *1-4 (N.D. Ill. June 30, 2010). The Court

discusses them here, therefore, only insofar as they are relevant to Pfizer's current Motion. Pfizer

owns the primary patent at issue in this case, U.S. Reissue Patent No. 40,667 ("the '667 patent"),

which it uses to produce the highly profitable anti-cholesterol drug Lipitor®. The Federal Drug

Administration approved Lipitor®, which contains atorvastatin calcium, in 1996, and Pfizer

began selling it in 1997. Not surprisingly, Lipitor®'s commercial success provided a significant

incentive for various generic drug companies to attempt to enter the atorvastatin market by filing

Abbreviated New Drug Applications ("ANDA"). *See id.* at *1-3 (describing the ANDA process

under the Hatch-Waxman Act, 21 U.S.C. § 355).

      Ranbaxy Laboratories Ltd. ("Ranbaxy") was the first of the generic companies to file an

ANDA in August, 2002. Its filing included all five patents that Pfizer held on Lipitor® at the

time. In response, Pfizer filed suit against Ranbaxy for patent infringement on two of these

patents, and the Federal Circuit eventually found one to have been infringed (Patent No. 4,681,

893) and one not to have been (Patent No. 5,273,995). *See Pfizer, Inc. v. Ranbaxy Laboratories

Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006). The latter patent is the one at issue here as the '667 reissue

patent. Pfizer and Ranbaxy eventually entered a settlement agreement under which Ranbaxy

agreed not to market its generic product until November 30, 2011. *Pfizer*, — F. Supp.2d —,

2010 WL 2649841, at *3. Other generic drug manufacturers followed Ranbaxy's lead, and suits

between Pfizer and Teva Pharmaceuticals USA, Inc. ("Teva") and Cobalt Pharmaceuticals Inc.

("Cobalt") also ended in settlement agreements. *Id.* Apotex filed its ANDA for atorvastatin on

November 4, 2008, and Pfizer took swift action to fend off Apotex by filing this patent

infringement suit on December 17 of the same year. Apotex quickly filed counterclaims asserting non-infringement and the invalidity of a number of Pfizer's patents.

As part of its case, Apotex sought to discover several classes of documents related to, among other things, Pfizer's settlements with Teva and Cobalt as well as Pfizer's handling of the entry of generic atorvastatin onto the market. Unsurprisingly, Pfizer strongly objected to the production of these documents, and Apotex filed a motion to compel production on four primary requests:

> REQUEST NO. 114: Any and all documents and things relating to generic competition or potential competition for LIPITOR® or to preventing generic entry of LIPITOR® on to the U.S. market.

> REQUEST NO. 115: Any and all documents and things relating to "Life Cycle Management" of LIPITOR®.

>     \*    \*    \*    \*

> REQUEST NO. 122: All documents and things regarding any authorized generic entry agreements, licenses and/or contracts [Pfizer has] entered into with any other drugs [that] are subject to a patent challenge.

>     \*    \*    \*    \*

> REQUEST NO. 123: All documents and things regarding any agreements, licenses and/or contracts relating to any agreement reached between Plaintiffs and any third-party regarding the marketing of generic versions of Plaintiffs' atorvastatin products, including but not limited to any authorized generic entry agreement.

On August 4, 2010, this Court granted parts of Apotex's motion. *See Pfizer, Inc. v. Apotex, Inc.*, — F. Supp.2d — , No. 08 C 7231, 2010 WL 3087458 (N.D. Ill. Aug. 4, 2010). The Court denied Apotex's request for documents relating to the settlement agreements, but found that the company was entitled to the agreements themselves. The Court determined that the

- 3 -

settlement agreements were relevant on two grounds. First, any licensing agreement between Pfizer and Ranbaxy could be relevant to secondary considerations such as the obviousness of the '667 patent and the commercial success of Lipitor®. *See id.* at *3-4. Secondary considerations include "commercial success, long-felt but unsolved needs, failure of others, and the presence of a motivation to combine, or avoid combining, prior art teaching." *Power-One Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1352 (Fed. Cir. 2010) (internal quotation and citation omitted). Second, the settlement documents might also be used as a defense for Apotex to show that Pfizer misused its patent by, among other things, threatening an infringement claim based on the '667 patent. *Pfizer*, — F. Supp.2d —, 2010 WL 3087458, at *4. The Court also found the generic entry documents were relevant in this case because they might show the harm Pfizer would suffer if generic atorvastatin enters the market. *Id.* at *6-7.

Pfizer now seeks a protective order covering the documents it must produce because they are allegedly confidential in nature. Pfizer seeks two forms of protection. According to Pfizer, Apotex's outside counsel in this suit who review the produced documents should be prevented from advising Apotex and other generic drug companies on settlement terms in this or any future litigation related to Lipitor®. Pfizer also seeks to limit the ability of Apotex's outside litigation counsel who see the documents from advising Apotex and other companies on how to introduce generic atorvastatin to the market.

## II. Legal Standard

Federal Rule of Civil Procedure 26(c) provides that a court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" on eight separate grounds, including an order that "confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(G). The party seeking a protective order bears the burden of proof to show that good cause exists for its issuance. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). "The sole question is whether there is an unacceptable risk of or opportunity for 'inadvertent disclosure' of confidential information." *Autotech Techs. Ltd. Psp. v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 407 (N.D. Ill. 2006) (quoting *Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991)). If such a risk exists, a court must weigh it against the burden that would be placed on the party seeking the information if it is denied material necessary to its defenses or claims. *In re Deutsche Bank*, 605 F.3d at 1380.

## III. Discussion

Before examining the merits of Pfizer's Motion, the Court notes that Fed. R. Civ. P. 26(c) requires the party requesting a protective order to "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). Failure to include the required certificate of compliance is grounds for denying a protective order. *Semsroth v. City of Wichita*, No. 06-2376-KHV, 2007 WL 4442161, at *1 (D. Kan. Dec. 17, 2007). Northern District of

Illinois Local Rule 37.2 also provides that the Court will refuse to hear motions under Rule 26 unless the moving party states that it consulted in person or by phone with the opposing party and made "good faith attempts" to resolve differences, providing the date, time, and place of such a conference as well as the names of the participating attorneys. N.D. Ill. R. 37.2.

Here, Pfizer has not complied with Rule 26(c) or Local Rule 37.2. Its Motion does not certify that Pfizer made good faith attempts to resolve this matter with Apotex, but instead attaches a letter demanding that Apotex comply with a prior letter agreement between the parties. The Motion includes a footnote stating that an unnamed Pfizer attorney "inquired" about this letter with an unnamed Apotex lawyer on August 17. (Pltf's. Mot. at 2 and Ex. B.). However, conferring "means more than mailing or faxing a letter to the opposing party." *Drake v. Reser's Fine Foods, Inc.*, No. 08-2592-KHV, 2009 WL 1532698, at *1 (D. Kan. June 2, 2009). Both Rule 26(c) and N.D. Ill. R. 37.2 are designed to encourage parties to resolve their differences without judicial intervention, thereby easing burdens on both the Court and the litigants. *See* N.D. Ill. R. 37.2 (stating that its requirements are designed "[t]o curtail undue delay and expense in the administration of justice."). Nonetheless, the Court does not deny Pfizer's Motion on this narrow ground because the parties have already engaged in substantial briefing and presented oral arguments on their positions. Deferring a decision on Pfizer's Motion at this point would only increase the delay and expense the requirements of Rule 26(c) and Local Rule 37.2 are intended to avoid.

- 6 -

## A.    Competitive Decisionmakers

In gauging the risk that confidential information might be inadvertently disclosed, courts

must inquire into whether or not the attorney seeking to review the disputed material is involved

in "competitive decisionmaking." The Federal Circuit has defined this term as "shorthand for a

counsel's activities, association, and relationship with a client that are such as to involve

counsel's decisions (pricing, product design, etc.) made in light of similar or corresponding

information about a competitor." *U. S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3

(Fed. Cir. 1984). Courts should undertake a case-by-case analysis and give particular attention to

the specific facts surrounding each attorney's activities and relationship with the party he or she

represents. *Id.* As many courts have noted, *U.S. Steel*'s list of activities is not exclusive, and

courts should undertake a complete analysis of an attorney's relationship with corporate officials

who are competitive decisionmakers.[1] *See, e.g., Autotech Techs.*, 237 F.R.D. at 408.

Pfizer does not argue that Apotex's litigation attorneys are currently involved in

competitive decisionmaking with their client. Instead, it seeks to prohibit those attorneys who

---

[1] For the sake of argument, the Court accepts Pfizer's contention that its settlement agreements and generic entry documents are confidential. In its Motion, Pfizer only states that its documents are confidential "by their nature." (Pltf's. Mot. at 5.) This overlooks the fact that Pfizer bears the burden of proof to show confidentiality. *See American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 740 (Fed. Cir. 1987) ("One seeking a protective order . . . must establish that the information sought is confidential."). Pfizer submitted the documents to the Court for an *in camera* review, but only provided redacted copies until the Court expressed surprise at the hearing that Pfizer had withheld some of the information it claims is confidential. On September 14, Apotex filed a motion to impose sanctions on Pfizer for giving it unredacted documents in response to the Court's August 4 Order. The next day, Pfizer submitted to the Court what purported to be unredacted versions of the settlement agreements and generic entry documents. The settlement documents were unredacted, but portions of the generic entry documents continue to contain some redacted material. The redactions do not appear to be significant, however, and in light of the Court's denial of a protective order, Pfizer will now produce completely unredacted versions of these documents to Apotex.

review Pfizer's documents from engaging in future activities that Pfizer alleges will constitute

competitive decisionmaking. In particular, Pfizer moves to restrict reviewing attorneys from

advising Apotex and future clients on how to settle patent infringement claims related to

Lipitor®. Pfizer also seeks to prevent Apotex's attorneys who see the documents from advising

Apotex and all future clients on how to introduce atorvastatin to the generic drug market.

According to Pfizer, Apotex's counsel represents other companies who may also introduce

generic competitors of Lipitor®, and giving counsel access to the confidential documents will

allow Apotex's attorneys to "shape and influence the direction of [these and future] settlement

negotiations."[2]  (Pltf's. Mot. at 6.)

　　Two hurdles quickly block Pfizer's journey down this path. First, both parties overlook

that courts have held that an attorney who reviews confidential information does not

automatically become a competitive decisionmaker because he advises clients on settlement

agreements. *See Sprint Commc'ns Co. LP v. Big River Telephone Co., LLC*, No. 08-2046, 2008

WL 4401690, at *3-4 (D. Kan. Sept. 16, 2008) (rejecting such a finding in the absence of specific

evidence); *see also Wi-Lan, Inc. v. Acer, Inc.*, No. 07-CV-473 *et al.*, 2009 WL 1766143, at *3

(E.D. Tex. June 23, 2009) (finding that in-house counsel's role in settlement negotiations did not

suffice). The party moving for a protective order must proffer evidence linking settlement

---

[2] The Court notes that Apotex is represented in this case by the law firm of Rakoczy, Molino, Massochi, Siwik LLP, whose website hails the firm's expertise in "FDA and Hatch-Waxman counseling & litigation." *See* http://www.rmmlegal.com/PracticeAreas. Strictly speaking, however, Pfizer presents no evidence to support its claim that Apotex's attorneys represent clients who may introduce generic competitors of Lipitor®. Even if the Court took judicial notice that counsel represents generic competitors, Pfizer still fails to provide any evidence or argument that Apotex's attorneys are likely to inadvertently disclose confidential information to its future clients.

negotiations and competitive decisionmaking in order to prevail, and as noted below Pfizer has presented none at all. Second, the Federal Circuit has made clear that the party who seeks an order barring a reviewing attorney from engaging in certain acts must show, among other things, that "the duration of the bar . . . reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1381 (Fed. Cir. 2010). In this case, the proposed protective order is of indefinite duration, and Pfizer provides no explanation as to why the Court should impose such a bar on Apotex's attorneys.

Instead of noting these roadblocks or providing reasons why they should not apply here, Pfizer takes a different direction. Relying primarily on *Deutsche Bank, supra*, Pfizer argues that courts have restricted an attorney's use of confidential information received from a competitor when the risk of disclosure is high and that, by analogy, this Court should do the same. The legal proposition for which Pfizer cites *Deutsche Bank* is well established, of course, but the company's reliance on that case is misplaced. *Deutsche Bank* did not impose a bar on a reviewing attorney's activities; it vacated a district court's order that imposed a patent prosecution bar on attorneys who reviewed Deutsche Bank's confidential information disclosed in a patent infringement suit. Moreover, *Deutsche Bank* involved a bar on patent prosecution, and in this case Pfizer seeks restrictions on settlement negotiations and market advice in an ongoing lawsuit. Pfizer overlooks that "prosecuting patents is distinct from other legal duties and presents unique opportunities for inadvertent disclosure." *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp.2d 728, 737 (D. Minn. 2008) (internal quote and citation omitted). The proposed protective order does not seek to bar Apotex's attorneys from prosecuting patents for their clients,

and Pfizer makes no argument as to why the Court should apply caselaw based on patent prosecution to the facts of this case.

Equally important, Pfizer overlooks the essential point of *Deutsche Bank*: the party seeking to bar certain activities must rely on specific evidence – not an inflexible rule – that supports a finding of competitive decisionmaking. *See Deutsche Bank*, 605 F.3d at 1380 (directing courts "to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis."); *see also U.S. Steel*, 730 F.2d at 1468 (requiring a showing of "factual circumstances surrounding each individual counsel's activities"). This Court has followed the Federal Circuit's directive on competitive decisionmaking by requiring a "comprehensive inquiry" into an attorney's relationship with a company, its officers, and its activities. *Autotech Techs.*, 237 F.R.D. at 408. Other courts have done likewise. *See, e.g., Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*, No. 08-158, 2009 WL 1210638 (D. Me. April 30, 2009); *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, No. 07-CV-346, 2008 WL 5634214 (E.D. Tex. March 14, 2008).

In this case, however, Pfizer has submitted no evidence supporting its Motion and proffered none at the hearing. Pfizer has not provided the Court with an affidavit, declaration, or other form of evidence on any issue related to its proposed protective order. As a result, the Court has no evidentiary basis to determine what relations Apotex's attorneys have with their client, what the scope of their representation of Apotex is, who they advise or consult with in the company, or any other ground by which the Court could gauge the risk of inadvertent disclosure of confidential information. Without such evidence, a party has not shown why a court should

- 10 -

impose a bar on opposing counsel's activities. *Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, No. 08 C 1215, 2010 WL 1912250, at *2 (N.D. Ill. May 12, 2010).

Nevertheless, one issue gives the Court pause before deciding that Pfizer has not carried its burden of proof. Some courts have found that outside trial counsel who negotiate license agreements as part of settlement negotiations may be engaged in "litigation-based competitive decisionmaking." *Fairchild Semiconductor*, 2009 WL 1210638, at *10; *see also Northbrook Digital*, 625 F. Supp.2d at 759-61 (discussing licensing and competitiveness). The parties do not specifically argue whether Apotex's attorneys will fall into this category if they negotiate a license agreement with Pfizer, but they briefly touch upon the issue by quoting two opposing case authorities that concern the Court. Apotex points out that this Court previously stated "that licensing and settlement negotiations are [not] necessarily part of competitive decisionmaking, leading to the exclusion of participating attorneys from access to information."[3] *Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312 *et al.*, 2006 WL 1994541, at *2 (N.D. Ill. July 13, 2006). Pfizer counters with a contrary authority stating that "[i]nvolvement in a party's licensing activity . . . implicates competitive decision making." *Northbrook Digital LLC v. Vendio Servs., Inc.*, No. 07-2250, 2008 WL 2390740, at *16 (D. Minn. April 4, 2008). Each party appears to invite the Court to adopt its quote as a *per se* rule that licensing either involves competitive decisionmaking (Pfizer) or does not (Apotex).

---

[3] Apotex argued in the hearing that *Trading Technologies*, which involved patent prosecution, constitutes binding precedent. This overlooks that the language concerning licensing and settlement agreements was merely incidental to the case and does not provide definitive guidance. *See Price v. Pierce*, 823 F.2d 1114, 1120 (7th Cir. 1987) (explaining that dictum is not binding).

Neither of these positions is persuasive because, as *Trading Technologies* implies, licensing and competitive decisionmaking can be connected to one another, though the connection is not necessarily present in all cases. *Trading Techs.*, 2006 WL 1994541, at *2. Courts that have equated licensing with competitive decisionmaking have relied on specific evidentiary records – often complex ones – and not on inflexible rules to reach their decisions. *See, e.g., ST Sales Tech Holdings*, 2008 WL 5634214, at *5 (finding that an attorney with "extensive" relations to his client, including licensing activities, was a competitive decisionmaker); *Fairchild Semiconductor*, 2009 WL 1210638, at *9-10; *Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525 (N.D. Cal. 2000). Moreover, equating licensing and competitive decisionmaking as a *per se* matter does not conform with the Federal Circuit's long-standing directive that competitiveness can only be determined on a case-by-case basis. In both *Deutsche Bank* and *U.S. Steel*, the Federal Circuit stressed that rigid rules related to competitive decisionmaking must give way to a review of each case's facts. "The facts, not the category must inform the result." *In re Deutsche Bank*, 605 F.3d at 1379. *See also Nazomi Commc'ns, Inc. v. ARM Holdings PLC*, No. C 02-02521, 2002 WL 3281822, at *3 (N.D. Cal. Oct. 11, 2002) (refusing to impose a prospective license negotiation bar without supporting evidence).

For this reason, Pfizer's failure to submit any evidence on relations between Apotex's outside counsel and the company's actual decisionmakers means that Pfizer has not carried its burden of proof to show that Apotex's attorneys engage in competitive decisionmaking or that a high risk of inadvertent disclosure warrants issuing a protective order.

## B. Balancing the Risk of Harm

The party seeking a protective order must also demonstrate that it will be harmed by disclosing information it believes to be confidential. *American Standard*, 828 F.2d at 740. As a crucial part of the good cause basis for a protective order, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (internal quote and citation omitted); *see also Sprint Commc'ns*, 2008 WL 4401690, at *2 ("Categorical arguments that a party will be harmed by the disclosure are insufficient."). If it does so, the burden shifts to the party seeking the information to show that disclosure is relevant and necessary to its case. *American Standard*, 828 F.2d at 741. If both litigants meet these requirements, a court must balance the need of the party seeking disclosure against the opposing party's claim of injury. *See In re Deutsche Bank*, 605 F.3d at 1380; *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007).

Pfizer claims in its Motion that the settlement agreements and generic entry documents will give Apotex an "immense potential competitive advantage," (Pltf's. Mot. at 5.), but the Motion is silent on why this is the case. Pfizer's Reply provides a somewhat more focused argument. The company alleges there that the settlement agreements will show what patent rights it agreed to retain in settling with other generic manufacturers, thereby giving Apotex an unfair commercial advantage over Pfizer in any settlement negotiations between the parties in this case. (Pltf's. Reply at 4-5.) In addition, Pfizer contends that the generic entry documents will be of "immense" value to Apotex because they reveal the company's "worldwide patent and marketing strategies." (*Id.* at 5-6.)

- 13 -

The Court recognizes that disclosing the documents submitted for *in camera* review may reveal sensitive information that could be useful to Apotex. This does not necessarily mean, however, that Pfizer has made "a particular and specific demonstration of fact" supporting its claim of injury. *Gulf Oil*, 452 U.S. at 102 n.16; *see also MGP Ingredients*, 245 F.R.D. at 501 (stating that a party seeking a protective order must demonstrate harm in "meaningful detail."). Pfizer's principal argument for withholding the generic entry documents is that they reveal the company's worldwide strategy for marketing Lipitor® after the entry of Ranbaxy's generic atorvastatin on November 30, 2011. (Pltf's. Reply at 5.) The Court's review of these documents is somewhat limited because, as noted above, Pfizer has not provided completely unredacted versions of them in its two *in camera* submissions. Nevertheless, it is clear that one set of documents contains tables and figures for Lipitor®'s projected sales, and Pfizer has not directed the Court's attention to any marketing strategy in it. The second document appears to contains some marketing information, but Pfizer does not show how the document contains its worldwide strategy. The Court's review of it reveals only a small number of references in the document's Appendix to locations outside the United States.

Assuming for the sake of argument that Pfizer would suffer harm by disclosing the contested documents, its injury does not outweigh Apotex's potential need for the information. Apotex has already carried its burden of proof to demonstrate relevance as part of its earlier motion to compel the production of these documents. As the Court made clear in its August 4 Order, the documents are potentially important to Apotex on issues of secondary considerations and patent misuse. In addition, the market share information contained in the generic entry

- 14 -

documents could be important for Apotex to show that Pfizer would not suffer irreparable harm if a permanent injunction is not issued against Apotex.

Although not entirely clear, Pfizer appears to argue that its harm is greater than Apotex's benefit because the documents in question contain "additional information" that is highly sensitive, but irrelevant to Apotex's discovery requests. (Pltf's. Reply at 3.) Pfizer does not identify what part of the agreements constitutes "additional information" and fails to distinguish between the irrelevant additional material and other portions of the documents that, presumably, *are* relevant. As a result, the Court does not know what portions of the settlement agreements and generic entry documents Pfizer is referencing in this argument. Insofar as Pfizer is raising relevance as a factor to be balanced against Apotex's gain, the time for such an argument has now passed. The Court's August 4 Order determined the relevance of Pfizer's documents, and Pfizer did not file objections to the Court's decision. It cannot reargue the relevance issue at this point under the guise of confidentiality.

Pfizer also contends that its potential harm outweighs Apotex's need for these documents because the scope of its request is limited. According to Pfizer, Apotex's attorneys who try this case can see the confidential information, and only those who are engaged in settlement negotiations should be restricted. This argument, however, only returns us to where we began: Pfizer has presented no evidence that Apotex's outside counsel are competitive decisionmakers and, as a result, has not shown why reviewing relevant information should bar them from settlement negotiations. Pfizer essentially proposes that Apotex go to trial with one set of attorneys who have seen the evidence this Court has already found to be relevant and discoverable, but that Apotex should enter settlement negotiations through another set of

- 15 -

attorneys who do not know the full strength or weakness of their client's case. In the absence of any authority or evidence submitted by Pfizer, the Court finds such a distinction to be unwarranted under these facts.

Pfizer's request that Apotex's attorneys who see confidential information be barred from "advising, guiding, planning, or assisting" Apotex in introducing generic atorvastatin is unfounded for the same reasons. Pfizer has presented no evidence showing that Apotex's outside trial counsel plays any role in these activities with the company or has contacts with Apotex that would give rise to such opportunities in the future. Apotex's counsel represented in open court that any information Pfizer discloses would be kept from Apotex and would be viewed only by outside counsel in relation to this lawsuit. (Def's. Response at Ex. A.) To rebut this, Pfizer is required to demonstrate counsel's "involvement with the plaintiff's internal business activities" that creates a high risk of inadvertent disclosure. *Intellect Wireless*, 2010 WL 1912250, at *2. Failing such a showing, therefore, Pfizer has not carried its burden of proof to demonstrate that good cause supports issuing the protective order it seeks.

## IV. Conclusion

For the foregoing reasons, the Court finds that Pfizer has not demonstrated that it is entitled to a protective order restricting access to the documents the Court previously ordered to

be produced. Thus, the Motion for a Protective Order (Dckt. # 192) is denied, and Pfizer is

ordered to comply fully with the Court's August 4, 2010 Order.

ENTER ORDER:

MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** September 29, 2010.

- 17 -